IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| RAMON VARGAS | § | |
| VS. | § | CIVIL ACTION NO. 1:16-CV-498 |
| DAVID ST. CLAIR, ET AL. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Ramon Vargas, a prisoner previously confined at the Federal Correctional Complex in Beaumont, Texas, proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against David St. Clair, Heather Plessala, and Dr. Issam Harmoush.

The above-styled action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 and the Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Defendants St. Clair, Plessala, and Harmoush filed a motion for summary judgment. This report and recommendation considers the merits of the motion.

Factual Background

Plaintiff alleges he was diagnosed with adult onset non-insulin dependent diabetes prior to his incarceration. On January 13, 2015, plaintiff was transported to the federal prison in Beaumont, Texas. Plaintiff alleges defendants St. Clair, Plessala, and Harmoush, who were medical providers at the federal prison in Beaumont, denied him appropriate medical treatment for diabetes.

On January 14, 2015, plaintiff was evaluated by defendant St. Clair during an initial health screening. Defendant St. Clair noted that plaintiff's left pinky toe had been amputated, and that plaintiff had pain spasms in his feet. Plaintiff requested diabetic shoes and socks, but plaintiff alleges defendant St. Clair refused his request, and he also denied plaintiff's request to keep the diabetic shoes and socks that he had prior to his incarceration.

On January 23, 2015, plaintiff saw defendant Plessala for a physical examination and medical history. Plaintiff alleges that he discussed his diabetes and previous amputation with defendant Plessala, and that she seemed to agree that plaintiff needed diabetic shoes and socks. Plaintiff saw defendant Harmoush for a chronic care evaluation on January 27, 2015. Defendant alleges he requested diabetic shoes and socks, but defendant Harmoush did not reply to plaintiff's request.

Because he did not have diabetic shoes, plaintiff alleges that he wore prison issued steel-toed boots when he went for meals. Plaintiff alleges he developed an ulcer on his right pinky toe from his toe rubbing against the boot. On March 9, 2015, plaintiff submitted a sick call request and was examined by defendant Plessala. Plaintiff alleges defendant Plessala lanced the blister, applied medication and a bandage, and gave plaintiff a post-operative shoe and crutches. Plaintiff alleges he asked about diabetic shoes and socks, but she told him that they had not been approved.

On March 16, 2015, plaintiff went to the medical department for a follow-up appointment. Defendant Plessala said that the ulcer seemed to be healing. Defendant Plessala said that she would place plaintiff on the call out list to check it again, but plaintiff never saw that he was on the call out list. Plaintiff alleges he continued to treat the ulcer with supplies he was given at his wound care appointments.

Plaintiff saw a physical therapist on March 23, 2015. Plaintiff alleges the physical therapist noted multiple foot deformities and she did not understand why plaintiff's request for diabetic shoes and socks had not been approved.

Plaintiff alleges he ran out of medical supplies while the prison was on lockdown, and his wound got worse. Plaintiff alleges he requested to go to the medical department and sick call, but the correctional officers did not bring him for medical treeatment.

On May 7, 2015, plaintiff submitted a sick call request, and he was seen by defendant Plessala. Plaintiff alleges defendant Plessala ordered an x-ray, a new post-operative shoe, and a wheelchair. Plaintiff alleges he had laboratory tests on May 14, 2015, and he went for a follow-up appointment on May 18, 2015.

On May 21, 2015, plaintiff saw Nurse Baker for wound care, and she changed his treatment plan. Plaintiff went to wound care on May 24, 2015, and he was put on the call out list because the ulcer was worse. On May 26, 2015, plaintiff alleges defendant Plessala changed the treatment plan back to the original plan. Plaintiff alleges he had several wound care visits on unknown dates, and he was given medical supplies to treat the ulcer in his cell.

On June 16, 2015, plaintiff was fitted for diabetic shoes. On August 4, 2015, plaintiff was issued a pair of boots, but he did not receive the diabetic inserts, and the orthotist did not have or know about diabetic socks. Plaintiff alleges he tried to wear the boots, but the prison socks slid on the insoles of the boots and irritated the ulcer on his toe.

Plaintiff alleges his wheelchair was replaced on August 13, 2015, because the wheel broke. Plaintiff contends the new wheelchair was too large, and plaintiff developed an ulcer on his left big

toe from using his toes to help propel the char. Plaintiff went to the medical department on August 18, 2015, and an x-ray was ordered.

On August 23, 2015, defendant St. Clair reordered silvadene for plaintiff. Plaintiff saw defendant Plessala for a follow-up visit on August 25, 2015. Plaintiff alleges he informed her that he could not wear his boots until he received the custom inserts and diabetic socks.

Plaintiff alleges he went to the medical department on September 4, 2015, because the ulcer had started to smell. On September 8, 2015, plaintiff was examined by defendant Plessala. Defendant Plessala allegedly agreed that the wound had a pungent smell. Defendant Harmoush consulted briefly with defendant Plessala. Defendant Plessala gave plaintiff a wheelchair that fit him properly so that he would not have to use his feet to propel it. Plaintiff also received another x-ray.

On September 21, 2015, plaintiff went to the medical department for a checkup and asked about the custom inserts and diabetic socks, but did not receive any information. Plaintiff alleges he emailed Health Services asking for a walker to help with his balance.

On September 25, 2015, plaintiff alleges he saw a different doctor and requested a walker from that doctor. On October 14, 2015, plaintiff went to medical, and an unidentified medical provider prescribed a wet wrap for plaintiff's foot.

At a medical visit on October 27, 2015, plaintiff saw defendants Plessala and Harmoush. Plaintiff told the defendants that he had received the custom inserts, and they told him to start walking on his foot. Plaintiff alleges he could not walk because he still had the wet wrap and it was too painful to walk.

On October 30, 2015, plaintiff had another x-ray. On November 1, 2015, plaintiff alleges he saw defendant St. Clair because his foot was swelling. Defendant St. Clair allegedly told plaintiff that the foot looked infected.

On November 6, 2015, plaintiff alleges defendants Plessala and Harmoush sent plaintiff to a local emergency room. Plaintiff was admitted to the hospital, and he received intravenous antibiotics and another x-ray. On November 11, 2015, plaintiff's right pinky toe was amputated.

### Defendants' Motion for Summary Judgment

Defendants contend that plaintiff failed to allege facts demonstrating the defendants were deliberately indifferent to his serious medical needs. In support of the motion, defendants submitted their affidavits and plaintiff's relevant medical records.

### Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a). A fact is material if it could affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Instone Travel Tech Marine & Offshore v. International Shipping Partners*, 334 F.3d 423, 427 (5th Cir. 2003). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Instone Travel Tech*, 334 F.3d at 427.

Because summary judgment is a final adjudication on the merits, courts must employ the device cautiously. *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely

because of unskilled presentations." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989) (*quoting Murrell v. Bennett,* 615 F.2d 306, 311 (5th Cir. 1980)).

Analysis

Although the Eighth Amendment does not explicitly mandate a certain level of medical care for prisoners, the cruel and unusual punishment clause has been interpreted to impose a duty on prison officials to provide inmates with adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999). A prison official's deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, whether the indifference is manifested by prison doctors or by prison guards. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 754 (5th Cir. 2001).

An Eighth Amendment claim consists of two components--one objective and one subjective. *Farmer*, 511 U.S. at 839. To satisfy the objective requirement, the plaintiff must prove that he was exposed to a substantial risk of serious harm. *Id.* at 834; *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002). The plaintiff must also demonstrate that the defendant was deliberately indifferent to that risk. *See Farmer*, 511 U.S. at 834; *Lawson*, 286 F.3d at 262. The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the defendant was aware of an excessive risk to plaintiff's health or safety, and yet consciously disregarded the risk. *Farmer*, 511 U.S. at 840-41; *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002); *Stewart*, 174 F.3d at 534.

Under exceptional circumstances, the defendant's knowledge of a substantial risk of harm may be inferred by the obviousness of the risk. *Farmer*, 511 U.S. at 842; *Harris v. Hegman*, 198

6

F.3d 153, 159 (5th Cir. 1999); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994). Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

Mere negligence, neglect, or medical malpractice does not rise to the level of a constitutional violation. *Domino*, 239 F.3d at 756 ("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference."); *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999) ("[A]llegations of malpractice or negligence will never state a claim under the Eighth Amendment."); *Stewart*, 174 F.3d at 534. Nor does an inmate's disagreement with his medical treatment amount to an Eighth Amendment violation. *Stewart*, 174 F.3d at 537; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). "Rather, the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino*, 239 F.3d at 756 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Plaintiff alleges that defendant St. Clair refused to issue plaintiff diabetic shoes and socks, defendant Plessala failed to appropriately treat the ulcer or refer plaintiff to a specialist for eight months, and defendant Issam co-signed plaintiff's treatment. However, plaintiff's own summary of his medical treatment reflects that he received extensive medical treatment, from the named defendants and other medical providers, although that treatment was ultimately unsuccessful. While the facts might be sufficient to state a claim of medical malpractice, negligent conduct does not rise to the level of a constitutional violation. *Williams v. Hampton*, 797 F.3d 276, 280-81 (5th Cir. 2015) (noting that deliberate indifference requires a state of mind "more blameworthy" than negligence). In this case, the defendants' conduct does not rise to the level of egregious intentional conduct

required to satisfy the deliberate indifference standard. *See Gobert v. Caldwell*, 463 F.3d 339, 351 (5th Cir. 2006). Therefore, the defendants are entitled to summary judgment.

## Recommendation

Defendants' motion for summary judgment should be granted.

## Objections

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

**SIGNED this the 17th day of February, 2020.**

_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE